UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YOLANDA RODRIGUEZ,

                              *Plaintiff,*

    --against--                                          **VERIFIED COMPLAINT
                                                         AND JURY DEMAND**

                                                         Civil No. _____

BUFFALO MUNICIPAL HOUSING AUTHORITY,

                              *Defendant.*
-------------------------------------------------------------------X

    Plaintiff, YOLANDA RODRIGUEZ, by and through her attorney, LINDY KORN, ESQ., hereby complains of the Defendant, BUFFALO MUNICIPAL HOUSING AUTHORITY, upon information and belief, as follows:

## NATURE OF THE CLAIMS

    Plaintiff seeks the appropriate remedies and damages for discriminatory treatment based on race and sex discrimination, and retaliation in violation of New York Executive Law §296 and Title VII of the Civil Rights Act of 1964, as amended.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based upon Plaintiff's residency in the County of Erie, Defendant is located in the County of Erie, and a substantial part of the acts or omissions giving rise to the Plaintiff's claims occurred in the County of Erie.

## THE PARTIES

3. At all times, Plaintiff, YOLANDA RODRIGUEZ ("Plaintiff"), is a resident of the State of New York, Erie County.

4. At all times, BUFFALO MUNICIPAL HOUSING AUTHORITY ("Defendant" or "BMHA") is the City of Buffalo's Authority responsible for the construction, rehabilitation and modernization of all low-income public housing within the City of Buffalo, and its administrative/central office is located at 300 Perry Street, Buffalo, New York 14204.

5. At all times, Defendant employees over one hundred (100) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff, Yolanda Rodriguez, has exhausted all administrative remedies prerequisite to bringing this claim as follows:

7. On December 28, 2021, Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights (NYSDHR) alleging unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law). This matter was assigned NYSDHR Case Number 10215437.

8. The matter was cross filed with the United States Equal Employment Opportunity Commission (EEOC) and assigned Federal Charge Number 16GC201291.

9. On September 26, 2022, the New York State Division of Human Rights issued a Determination and Order After Investigation which found No Probable Cause. The matter was dismissed, and the NYSDHR file was closed.

2

10. Plaintiff timely requested the EEOC review of the NYSDHR findings.  The EEOC issued a Dismissal and Notice of Rights on November 1, 2022, resulting in a federal court filing deadline of January 30, 2023.

## TIMELINESS

11. When filing with a state agency, the Plaintiff has three hundred (300) days to bring a claim when using a state agency 42 U.S.C. 2000e.

12. Plaintiff's NYSDHR complaint filed alleging the most recent discriminatory act occurred on June 2, 2021.  This provided Plaintiff a last date to file a claim with the NYSDHR of March 29, 2022.

## FACTUAL BACKGROUND

13. Plaintiff is an Afro Latin female, single mother of a disabled adult son and a teenage daughter.

14. Plaintiff was hired by Defendant on May 6, 2001.

15. Plaintiff began her employment with Defendant as a housing aide starting at the LaSalle Courts, then 3 days into her employment was transferred to Stuyvesant Apartments, and then again transferred to Lakeview Homes where she spent the majority of her time as a housing aide.

16. Plaintiff has an Associates Degree in general studies and social sciences. She has experience in working for the community in different local agencies as case manager while working with the diverse population.  Plaintiff since 1999 has managed properties.

17. In or around 2002, Plaintiff was appointed provisional Housing Manager, and became a permanent Housing Manager in 2012 after scoring the second highest on the civil service exam.

18. At all relevant times, Defendant employs six (6) Housing Managers, three (3) are Caucasian and three (3) are Minorites. Five (5) are female and one (1) is male. Each Housing Manager is responsible for their assigned locations, broken up into six (6) Teams.

19. During the relevant times of this complaint, Plaintiff was assigned to Team 2 consisting of the Ferry Grider, Kelly Gardens, Kowal Apartments, LBJ apartments, Monsignor Geary apartments, and Schwab Terrace locations, and was responsible for 600 housing units.

20. Currently, as of July 11, 2022, Plaintiff has been assigned as Housing Manager of Team 4 consisting of Camden, Elmhurst, Holling, Jasper, LaSalle, and Shaffer apartments, which consist of 797 housing units, with 4 housing aides, 1 clerk, 2 assistant superintendents, 2 mechanics, and 4 laborers. Previously Managed by Stephanie Masiello prior to her promotion to Asset Manager.

## FACTUAL ALLEGATIONS

21. During Plaintiff's employment as Housing Manager, she witnessed her and the other minority Housing Managers being excluded from pertinent decision making and information about properties. However, Caucasian Manger, Stephanie Masiello (who was a peer Housing Manager to Plaintiff at the time) was given preferential treatment by being allowed to dictate orders and control aspects of properties which were under the minority Managers' supervision.

22. As an example, the Vacancy Board control and access was a job duty of each Housing Manager. However, Masiello, despite being a peer of the minority Managers, including the Plaintiff, was being allowed to dictate the Board and was sending out correspondence to the other minority managers as if she was their superior.

4

23. Further disparate treatment that Plaintiff had to endure in a negative way was the Housing locations
assigned to Stephanie Masiello (Caucasian Female) and to Brian Burke (Caucasian Male Housing
Manager), compared to the 3 minority managers, at all relevant times.

24. The disparate Housing assignments allowed Stephanie Masiello a fuller staff than Plaintiff and the
other minority Managers, which in effect caused Masiello to have more time for higher learning
of the aspects of the Agency.

25. The time provided to Masiello through the assignments of which Housing Units she was assigned,
as well as the fully assigned staff she was assigned, compared to the Minority Managers lead to
her qualifications for a promotion through further training opportunities not provided to minority
managers, as well as further access within the BMHA system, which was also not provided to the
minority managers. Ostensibly denying promotions for Plaintiff and other minority managers.

26. Further, Tammy Van Wey, Director of Management, gave Masiello more one-on-one extensive
meetings to provide her training to align Masiello to be more familiar and prepared to be promoted,
the other Housing Managers were not provided the same.

27. The inequality in Housing Units between Caucasian and Minority Managers creates an unequal
workload.

28. At all relevant times, Plaintiff managed 600 rentable units. Paula Sebastian (Caucasian Female)
managed 356, Brian Burke (Caucasian Male) 418, and Stephanie Masiello (Caucasian Female)
797.

29. However, Stephanie Masiello's 797 as compared to Plaintiff's 600 units: Masiello was fully staffed
with 4 aides and 1 typiest. Masiello's team was self-sufficient, leaving her to delegate tasks and
allowing for her to have more time to receive better opportunities to grow within BMHA. Plaintiff
on the other hand, had only 4 aides on her team. Two of her aides were on FMLA, the other got

5

injured and has been out, the fourth was a new hire. The differences in assigning aides to Plaintiff's units compared to Masiello's units was disparate to favor Masiello and gaining favor for promotion.

30. Caucasian Male Manager Brian Burke has been treated more favorably than the minority managers as he had reports brought to Defendant that he had been refusing to visit his residents, as required. Minority Managers including Plaintiff were held to this requirement of seeing tenants and attending meetings with contractors, which he is not held to the same requirement.

31. Further disparate treatment Plaintiff and other minority managers face is with the Defendant's legal department.

32. As an example, Plaintiff found a lien on one of her personal properties placed there by a tenant of BMHA. Plaintiff, upon learning of this lien, notified Defendant's Legal Department who stated they will resolve the issue. To date, this issue remains unresolved by Defendant. This financial and legal detrimental burden should be given the same legal defense that is given to all employees under the legal BMHA umbrella, which upon information and belief is Defendant's own policy.

33. As another example, Plaintiff had found that Masiello, while a Housing Manager, was able to get violent leasing violating tenants evicted. Upon information and belief, Masiello was given the knowledge to evict immediately while Plaintiff and the other minority manager were not. This left Plaintiff in an even more dangerous position at work.

34. On June 3, 2021, Plaintiff, as well as Magdelena Deleon and Diana Foster (both being the other two Minority Managers) raised such discriminatory acts to the attention of the Executive Director, Gilliam Brown, in a meeting where the three minority managers raised their complaint of discrimination and raised their complaint of the disparate treatment he provides to Masiello in grooming her for promotion to the title of Asset Manager.

35. Executive Director Brown stated in this complaint meeting the first step for BMHA is to conduct small group diversity trainings. As of the writing of this complaint, Plaintiff is unaware of any diversity training occurring, and she has not been selected to attend any diversity training.

36. Executive Director Brown stated in this complaint meeting that he nor BMHA had any plans to promote anyone to the position of Asset Manager.

37. On October 14, 2021, the asset manager position was posted.

38. Plaintiff, Deleon, and Foster all applied for the promotion. Each going through their interview with Tamara Van Wey, Theresa Spagna and Modesto Candelario.

39. Stephanie Masiello and Paula Sebastian (Caucasian Females) were chosen for the promotion of Asset Managers.

40. This was the direct discriminatory complaint the three minority managers raised to Director Brown, that BMHA was grooming Masiello for the promotion to Asset Manager.

41. After the internal complaint of discrimination made to Director Brown. There were no follow up interviews for any of the three complainants, nor anyone they work with to their knowledge.

42. Therefore, upon information and belief, Director Brown did not conduct any investigation into the complaint of discrimination.

43. Plaintiff and the other minority Managers have been subjected to unjust and, upon information and belief, discriminatory assignments of the locations they manage.

44. Upon information and belief, assignments of Manager's locations are at the sole discretion of Director Brown.

45. During Director Brown's tenure with BMHA, there has never been a Caucasian Manager assigned to Kenfield Langfield, which he has admitted being the "hardest development".

46. Within BMHA, there are more and less desirable locations to manage. The factors bringing form to this desire are public knowledge due to the news of violence, crime, and factors that bring about an unsafe work environment.  As an example:

47. On July 5, 2021, there was a fatal shooting at the Ferry Grider location while Plaintiff was on a scheduled vacation.

48. Upon Plaintiff learning of the shooting, she notified Tammy Can Wey that she is working to get a baby sitter in order to go to Ferry Grider.

   https://spectrumlocalnews.com/nys/buffalo/public-safety/2021/07/10/3-year-old-dies-after-shooting-on-donovan-drive-in-buffalo.

49. Plaintiff went to Ferry Grider on July 6, 2021, and was the day she learned the victim was a 3 year old child.

50. Due to this fatal incident and following the insensitive email sent to Plaintiff by the BMHA Legal Team on the day the News reported his death, Plaintiff left the office in mental distress.

51. On July 9, 2021 Plaintiff's was taken out of work per her doctor's orders.

52. On August 17, 2021, Plaintiff filed for Workers' Compensation due to the traumatic experience of a child being shot to death at a property she was managing and feeling responsible for leasing the unit to the victim's mother.

53. On November 11, 2021, a Notice of Decision found a *prima facie* case had been made.

54. On December 10, 2021, at approximately 11:40am Plaintiff received a phone call from Theresa Spagna asking where she was for the interview.  Plaintiff said she was unaware of any scheduled interview.  Ms. Spagna stated she sent Plaintiff a letter, however, Plaintiff did not receive the letter. Plaintiff asked Ms. Spagna if she had emailed her this letter, which she stated, no only by mail. All other candidates upon information and belief, received their interview request letter via email.

Ms. Spagna on this phone call stated she may be able to reschedule the interview but would "check". The interview was ultimately rescheduled.

55. On December 20, 2021, the independent doctor's report diagnosed Plaintiff with major depressive disorder and adjustment disorder with mixed anxiety and depressive mood.

56. On December 28, 2021, Plaintiff received notice from the NYSDHR that her Verified Complaint was served upon Defendant.

57. On January 11, 2022, Plaintiff attended her Workers' Comp Hearing.

58. On January 14, 2022, Workers' Comp affirmed Plaintiff's claims.

59. On April 28, 2022, Plaintiff's Workers' Comp claims were reversed on appeal.

60. On June 30, 2022, Plaintiff's doctor sent BMHA a request for accommodation for Plaintiff to work close to her place of residence and preferably in the senior development.

61. In response to the June 30, 2022 letter, Director Brown responded that Plaintiff would be transferred to Team 4.

62. On July 11, 2022, Plaintiff returned to work from her medical leave. On that day, Plaintiff learned BMHA had assigned her to work the same development that the mother of the deceased child was transferred to, as a deliberate act against Plaintiff, causing major relapsing mental distress upon Plaintiff.

63. Further on this day, Plaintiff learned Masiello would be working out of the same office building as her, and as the Asset Manager at 110 Blum Street. Prior to Plaintiff learning Masiello was assigned to work at the 110 Blum St location, Masiello and all other Caucasian Managers and Asset Managers were assigned to work out of 245 Elmwood office. Upon information and belief, Masiello choice the same location as Plaintiff to work out of, as Masiello stated to Plaintiff, "I can work wherever I want to be."

64. Since returning to work at close proximity to Masiello's newly built office, Plaintiff has been subjected to a hostile work environment at the hands of Masiello. Despite Plaintiff being told Masiello has no supervisory authority over her, Masiello continues to send harassing, dismissive emails directed to Plaintiff and her direct staff, while being allowed to go through Plaintiff's paperwork without any legitimate business-related reasoning for doing so.

65. Plaintiff is also aware of several other minority employees such as Alexis Hargro and Edwin Aponte, Jr., both made complaints of harassment against Masiello. The result of their complaints was Defendant transferring both minority employees to Kenfield Langfield, the "hardest development" as stated by Director Brown, as opposed to addressing the complaints against Masiello, showing a pattern and practice of Defendant retaliating against minorities for making complaints of discrimination.

66. BMHA's current Housing Unit assignments of Housing Managers, since the filing of Plaintiff's complaint of discrimination at the NYSDHR, has promoted only minorities to Housing Manager positions. At the same time, BMHA has promoted only Caucasian Managers to higher titles within the Management Team (Asset Managers and Director of Management). Yet Brian Burke, the only Caucasian Housing Manager, is once again assigned to the location with the least number of units, leaving all the newly promoted minority Housing Managers in the most dangerously known, highest-volume unit, most difficult developments.

67. Even as of the writing of this instant complaint, Plaintiff continues to be a target of direct racial harassment. On January 25, 2023, Plaintiff discovered, through her staff, a wooden carved out mammy with racial stereotypic language of "Wipe yo feet honey chile" placed in the service garage at the 110 Blum Street location, causing her to have to be taken off work sick for mental stress.

## FIRST CAUSE OF ACTION:
### Discrimination Based on Sex in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

68. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

69. Defendant's actions were willful and not done in good faith.

70. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

71. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION:
### Discrimination Based on Race in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

72. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

73. Defendant's actions were willful and not done in good faith.

74. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

75. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION:
### Hostile Work Environment Discrimination in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

76. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

77. Defendant's actions were willful and not done in good faith.

78. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

79. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION:
### Retaliation for Opposing Discrimination in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

80. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

81. Defendant's actions were willful and not done in good faith.

82. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

83. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION:
### Discrimination based on disability in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq., and ADA

84. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

85. Defendant's actions were willful and not done in good faith.

86. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

87. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION:
### Retaliation based on disability in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1)(a) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et. seq.

88. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

89. Defendant's actions were willful and not done in good faith.

90. As a result of Defendant's conduct, Plaintiff suffered great emotional harm.

91. Plaintiff is therefore, entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## INJURY AND DAMAGES

92. As a result of the acts and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, longevity pay, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to him reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendant:

a. Declaring that the Defendant engaged in unlawful employment practice prohibited by the New York Executive Law and Title VII of the Civil Rights Act of 1964, as amended, and that the Defendant discriminated against the Plaintiff on the basis of her sex, and race discrimination, and retaliation;

b. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

c. Awarding Plaintiff punitive damages;

d. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of this action;

e. Awarding Plaintiff such other and further relief that this Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount to be determined at trial plus interest, punitive damages, attorney's fees, costs, and disbursement of action, and for other such relief as this Court deems just and proper.

14

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) Fed. R. Civ. P., Plaintiff hereby demands a trial by jury for all

issues triable of right by a jury in this case.


Dated: January 27, 2023

Respectfully Submitted,
Plaintiff
By Her Attorney


<u>  **/s/  Lindy Korn**          </u>
LINDY KORN, ESQ.
Attorney for Plaintiff
Law Office of Lindy Korn, PLLC
Electric Tower, Ninth Floor
535 Washington Street
Buffalo, New York 14203
716-856-5676
716-507-8475 (facsimile)
E-Mail: lkorn@lkorn-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YOLANDA RODRIGUEZ,

                              *Plaintiff*,

        --against--                                    **VERIFICATION**

BUFFALO MUNICIPAL HOUSING AUTHORITY,

                              *Defendant*.
------------------------------------------------------------------X


Plaintiff, YOLANDA RODRIGUEZ, under penalty of perjury, deposes and says:


I have read the attached Complaint captioned in this matter and find it to be true to his personal knowledge, except as to matters alleged upon information and belief, which I believe to be true.

                                        _____
                                        YOLANDA RODRIGUEZ


Sworn before me on this 27ᵗʰ day of JANUARY , 2023


_____
Notary Public

MUHAMAD KHALED
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Erie County
01KH6328945
MY COMMISSION EXPIRES 08/07/2023

16